UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWIN AGUSTIN DORMOY, Plaintiff, v. HIRERIGHT, LLC, et al., Defendants. | Case No. 23-cv-02511-EMC<br><br>**ORDER RE DEFENDANT'S MOTION TO DISMISS**<br><br>Docket No. 20 |

Plaintiff Edwin Agustin Dormoy is a former driver for Lyft, Inc. ("Lyft") and Uber Technologies, Inc. ("Uber"). He has filed suit against Lyft and Uber, as well as HireRight, LLC ("HireRight") (collectively, "Defendants"), because his rideshare accounts were deactivated, and there was no response to his requests for information relating to the account suspensions. HireRight is an employment screening company that provides employment background reports to employers. Plaintiff claims HireRight's failure to respond to his request for a copy of his background screening file, violated the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and the California Investigative Consumer Reporting Agencies Act ("ICRAA"), Cal. Civ. Code § 1786.2 *et seq.*

HireRight moves to dismiss the complaint based on (1) lack of personal jurisdiction and (2) failure to state a claim for relief. *See* Fed. R. Civ. P. 12(b)(2), (6). With respect to the jurisdictional challenge, Plaintiff asks for leave to conduct jurisdictional discovery; in the alternative, Plaintiff requests a transfer of the claims against HireRight to a different district court (either in Tennessee or Oklahoma). The Court held a noticed hearing on the motion on July 27, 2023. Plaintiff failed to make an appearance for the hearing.

For the reasons discussed below, the Court finds that personal jurisdiction is lacking over HireRight and denies Plaintiff's request for jurisdictional discovery. However, in lieu of dismissal, the Court shall sever the claims against HireRight and transfer them to the Middle District of Tennessee. Because the Court lacks personal jurisdiction over HireRight, it does not address HireRight's motion to dismiss for failure to state a claim for relief.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Complaint

In his complaint, Plaintiff alleges as follows. Plaintiff is a resident of Philadelphia, Pennsylvania. Compl. ¶ 15. Plaintiff was a driver for the rideshare companies Lyft and Uber before both his accounts were suspended. In or about February 2021, Plaintiff's account with Lyft was deactivated. *Id*. ¶ 2. A few months later, in or about April 2021, Uber requested a background screening report on Plaintiff from HireRight (an employment screening company). *Id*. ¶ 3. In the report, HireRight alerted Uber that "Lyft, Inc. informed HireRight that [Plaintiff] is not currently eligible to use its platform due to safety-related reports." *Id*. ¶ 4, Ex. 1. Due to this background report, Plaintiff's Uber driver account was deactivated in April 2021. *Id*. ¶ 5. As a "direct result" of this report, "Plaintiff has lost two sources of income." *Id*. ¶ 7.

Approximately a year later, in March 2022, Plaintiff sent to HireRight a request for information, asking to obtain a copy of the "full file" of his original background check report. Plaintiff sent his request to a HireRight office located in Irvine, California.[1] *Id*. ¶¶ 8, 34. Certified mail tracking showed the request as "delivered" on March 14, 2022. *Id*. ¶ 35. In spite of such, HireRight has never produced the employment background check report that resulted in Plaintiff's Uber account suspension. *Id*. ¶ 9.

Based on, *inter alia*, the above allegations, Plaintiff has asserted six claims for relief. For purposes of the pending motion, the Court need only concern itself with Count 3, which is the sole

---

[1] Attached to Plaintiff's complaint as Exhibit 1 is what appears to be the report that HireRight gave to Uber. The front page of the report includes a notice to California consumers, instructing that, "If you would like additional information regarding your disclosure rights, you can request this information from HireRight by email . . . , by telephone . . . or by mail." Compl., Ex. 1 (report). The mailing address listed was the location of the Irvine office. Presumably, Plaintiff directed his request for information to HireRight's Irvine office based off of this notice.

1   claim pled against HireRight. *Id.* ¶¶ 23-52. In Count 3, Plaintiff alleges that HireRight, a
2   consumer reporting agency, violated its statutory duty under both federal and state law to respond
3   to requests for copies of consumer files. *Id.* ¶¶ 33–37. Specifically, HireRight violated §
4   1681g(a)(2)[2] of the FCRA and §§ 1786.10[3] and 1786.22[4] of the California ICRAA. *Id.* ¶¶ 15–27.

B.   Evidence re Personal Jurisdiction

As noted above, HireRight has moved to dismiss for lack of personal jurisdiction and for failure to state a claim for relief. In support of its motion to dismiss for lack of personal jurisdiction, HireRight has submitted evidence.[5] In contrast, Plaintiff has failed to submit *any* evidence. The Court briefly addresses the evidence provided by HireRight.

"HireRight is a limited liability company organized under the laws of Delaware." Piper Decl. ¶ 5. Apparently, HireRight once maintained its headquarters in Irvine, California. Counsel for HireRight made this express representation at the hearing on the motion to dismiss. While the Supplemental Vetter Declaration, submitted by HireRight after the hearing on the motion to dismiss, does not explicitly state such, it effectively confirms as much. Docket 46-1 ("Supp. Vetter Decl.") ¶ 10 (testifying that "HireRight operations have been centered and directed from states *other* than California since approximately 2019") (emphasis added). HireRight's current headquarters and principal place of business are in Nashville, Tennessee. Piper Decl. ¶ 5; *see also id.* ¶¶ 8–9 (testifying that HireRight's corporate office mailing address is in Nashville and that its

---

[2] Section 1681g(a)(2) of the FCRA provides in relevant part that "[e]very consumer reporting agency shall, upon request, and subject to section 610(a)(1) [*i.e.*, § 1681h(a)(1)], clearly and accurately disclose to the consumer: . . . (2) The sources of the information [in the consumer's file]." 15 U.S.C. § 1681g(a)(2).

[3] Section 1786.10 of the ICRAA provides, *inter alia*, that "[e]very investigative consumer reporting agency shall, upon request and proper identification of any consumer, allow the consumer to visually inspect all files maintained regarding the consumer at the time of the request." Cal. Civ. Code § 1786.10(a).

[4] Section 1786.22 of the ICRAA directs, *inter alia*, that "[a]n investigative consumer reporting agency shall supply files and information required under Section 1786.10 during normal business hours and on reasonable notice." Cal. Civ. Code § 1786.22(a).

[5] For purposes of the pending motion, the Court considers both the evidence that HireRight submitted in conjunction with its briefs, as well as the evidence that it provided after the hearing (as ordered by the Court).

1  Board meeting usually occur in Nashville). HireRight began "purposefully establishing its

2  headquarters and principal place of business in Nashville in April 2021." Supp. Vetter Decl. ¶ 10.

3  As of July 31, 2023, HireRight employs approximately 3,455 people globally. *Id.* ¶ 4.

4  Approximately 124 employees are based in Nashville. *Id.* ¶ 5. Another 237 employees are based

5  in Tulsa, Oklahoma, *id.* ¶ 6, and 67 are based in Irvine. *Id.* ¶ 7. Although HireRight continues to

6  have employees who are based in California, its Irvine office closed in March 2023 (the time when

7  Plaintiff filed his complaint). *Id.* ¶ 8. HireRight currently leases some suites in Newport Beach,

8  California, "for employees who need office or conference space to work while in California." *Id.*

9  ¶ 9.

10  HireRight does not dispute that it is registered to do business in California, as alleged in

11  the complaint. Compl. ¶ 17. However, HireRight does challenge Plaintiff's assertion that it was

12  headquartered in California. Plaintiff claims (without a declaration or any other specific evidence

13  to back up the claims) that HireRight has over 200 people at the Irvine office and that (based on an

14  "quick internet search") "8 of Defendant's top executives reside in Southern California." P's Opp.

15  at 6–7 (providing the names and titles of the employees at issue). HireRight directly disputes

16  these allegations and provides evidence in support. *See generally* Vetter Decl. In a declaration

17  from Sam Vetter, Senior Director of Human Resources, HireRight provides a comprehensive list

18  of executives and describes various states across the country wherein the company's chief

19  executives and officers reside. *Id*. ¶¶ 4–14. HireRight acknowledges that some of its executives

20  reside in California, namely the Chief Financial Officer and Chief Accounting Officer, but

21  maintains that most of its executives reside in other states. This includes the Chief Executive

22  Officer (South Carolina), the General Counsel (Utah), the Chief Human Resources Officer

23  (Texas), the Chief Digital Officer (Connecticut), and the Chief Technology Officer and the Head

24  of Global Operations (both Tennessee). *Id*. Although some of the "executives" Plaintiff

25  conclusory identifies in his opposition may be high-level employees (*e.g.*, Director of Business

26  Data Insights; Executive Vice President, Growth Verticals & Managing Director, Americas), they

27  do not appear to be high-level officers.

28  As for employees in California, HireRight admits, as noted above, that it has 67 employees

there. The California employees "includ[e] members of the finance and information technology departments"; none are involved "with receiving, processing, or fulfilling file disclosure requests." Piper Decl. ¶ 16; *see also id.* ¶ 13 (stating that "[n]one of the functions of the Applicant Care Team with respect to the receipt and fulfillment of file disclosure requests takes place, or took place, in California"). In fact, the "vast majority" of HireRight's operations team, responsible for maintaining and implementing policies and procedures compliant with the FCRA, is located in Nashville and Tulsa. *Id.* ¶¶ 6–7. In addition, HireRight's Applicant Care Team, which is "responsible for receiving and fulfilling file disclosure requests," is located "primarily" in Tulsa. *Id.* ¶ 11. According to HireRight, when Plaintiff mailed in his request for his consumer file to the Irvine office in March 2022, this was contrary to its website which "instruct[ed] consumers to send file disclosure requests to its Tulsa, Oklahoma office." *Id.* ¶ 12.

## II.    DISCUSSION

A.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(2), a court must dismiss an action where it does not have personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). "[T]he plaintiff bears the burden of establishing that jurisdiction is proper." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). However, "[w]here, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Id.* In addition, "[u]ncontroverted allegations in the complaint must be taken as true, and factual disputes are construed in the plaintiff's favor." *Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018). On the other hand, a district court "'may not assume the truth of allegations in a pleading which are contradicted by affidavit.'" *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 978 (9th Cir. 2021).[6]

B.    General Law on Personal Jurisdiction

As the Ninth Circuit has held:

---

[6] In the instant case, Plaintiff makes no jurisdictional allegations in the complaint other than a conclusory statement that HireRight is "subject to the jurisdiction of this Court." Compl. ¶ 17.

> Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits. Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same. For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least "minimum contacts" with the relevant forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice."

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004).

"There are two categories of personal jurisdiction: (1) general jurisdiction and (2) specific jurisdiction." *Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018). In its motion to dismiss, HireRight maintains that both general and specific jurisdiction is lacking in the case at bar. Notably, in his opposition, Plaintiff did not challenge HireRight's contention that there is no specific jurisdiction. Instead, he argues only that the Court has general jurisdiction over HireRight. Because Plaintiff has failed to address the issue of specific jurisdiction, in face of an express argument made by HireRight in its opening brief, the Court finds that he has waived the right to assert specific jurisdiction. *Cf. United States v. Olano*, 507 U.S. 725, 733 (1993) (defining waiver as "the intentional relinquishment or abandonment of a known right" in an analysis of Rule 52(b)); *see also Madau v. Nat. Balance Pet Foods, Inc.*, No. CV1504875SJOAJWX, 2015 WL 13917985, at *6 (C.D. Cal. Oct. 8, 2015) (holding that a plaintiff who failed to address a defendant's argument regarding the right to declaratory relief under the FCRA effectively waived the issue).

C.  General Jurisdiction

"Only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction [*i.e.*, general jurisdiction] there." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). For a foreign corporation to be subject to a forum's general jurisdiction, the corporation's affiliations with the state must be "so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The Supreme Court has emphasized that a corporation's place of incorporation and principal place of business are "'paradig[m] . . . bases for general jurisdiction.'" *Id.* (quoting

*Goodyear*, 564 U.S. at 924). "Only in an 'exceptional case' will general jurisdiction be available anywhere else." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (quoting *Daimler*, 571 U.S. at 139 n.19).

In *Daimler*, the Supreme Court held that, although a German corporation had a subsidiary car dealership in California which maintained "substantial, continuous, and systematic course of business" within the state, these contacts were not enough to render the parent corporation "at home" for purposes of general jurisdiction. *Daimler*, 571 U.S. at 199. Although the corporation benefitted from sizable sales within the state, the Argentinian plaintiffs' claims of human rights violations that occurred outside the United States had "nothing to do with anything that occurred or had its principal impact in California." *Id.* at 139. The Court declined to extend such an "exorbitant exercise[] of all-purpose jurisdiction" because it "would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Subsequent to *Daimler*, the Ninth Circuit held in an unpublished decision, *Johnson v. UBS AG*, 860 F. App'x 531 (9th Cir. 2021), that a Swiss corporation with a physical presence in California fell short of being "essentially at home" in the state. *Id.* at 532. The defendant Swiss corporation operated multiple branch offices, hired employees, and generated revenue in California, but this was not enough to establish a prima facie showing of general personal jurisdiction. *Id.*; *see also Pestmaster Franchise Network, Inc. v. Mata*, No. 16-CV-07268-EMC, 2017 WL 1956927, at *3 (N.D. Cal. May 11, 2017) (holding defendant's three California franchises were insufficient to establish general personal jurisdiction); *Garlough v. FCA US LLC*, No. 2:20-CV-01879-JAM-AC, 2021 WL 1534205, at *3 (E.D. Cal. Apr. 19, 2021) (holding defendant's two facilities in California were insufficient to establish general personal jurisdiction).

Plaintiff has failed to make out a prima facie showing of general jurisdiction. Although HireRight's evidence reflects that the company has a number of employees in California and maintains an office of some kind in Newport Beach, that in and of itself is insufficient to establish that the company is at home in the state. It is not headquartered in California.

The fact that HireRight once maintained headquarters in Irvine does not alter the analysis. Plaintiff has claimed that HireRight violated his statutory rights when it failed to respond to a request for information that he made in March 2022. By that time, HireRight no longer had its headquarters in California – and had not maintained headquarters in the state for approximately three years.[7] *See* Supp. Vetter Decl. ¶ 10 (testifying that "HireRight operations have been centered and directed from states *other* than California since approximately 2019") (emphasis added).

Plaintiff protests that HireRight's principal place of business is in fact in Irvine, California.[8] But as indicated above, Plaintiff has no evidence to support that claim. At most, he has made allegations in his opposition that he conducted an Internet search and found that a number of high-level employees are based in Irvine. HireRight submitted concrete evidence to the contrary – *i.e.*, the Vetter Declaration – demonstrating that, *inter alia*, most corporate executives and officers do not reside in California. While the Vetter Declaration was not submitted until HireRight's reply, Plaintiff could have tried to contest the Vetter Declaration at the hearing. He did not do so; indeed, as noted above, he failed to appear for the hearing altogether.

As in *Daimler*, Plaintiff nor Defendant are residents of California, Plaintiff's injury did not occur in California, and Defendant's activities and employees related to the action are located outside California. *Daimler*, 571 U.S. at 139. HireRight's place of incorporation and principal place of business are in Delaware and Tennessee, respectively, and there are no "exceptional"

---

[7] *See Delphix Corp. v. Embarcadero Techs., Inc.*, 749 F. App'x 502, 505 (9th Cir. 2018) ("'Courts must examine the defendant's contacts with the forum at the time of the events underlying the dispute when determining whether they have jurisdiction.'") (quoting *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987)); *see also Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569-70 (2d Cir. 1996) ("In general jurisdiction cases, district courts should examine a defendant's contacts with the forum state over a period that is reasonable under the circumstances – up to and including the date the suit was filed – to assess whether they satisfy the 'continuous and systematic' standard. The determination of what period is reasonable in the context of each case should be left to the court's discretion.").

[8] Plaintiff argues California is HireRight's principal place of business based on the "nerve center" test which is used for diversity jurisdiction. *See Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010) (noting that a corporation's "nerve center" is "where the corporation's high level officers direct, control, and coordinate the corporation's activities"). For purposes of this decision, the Court assumes that the nerve center test may be used for purposes of personal jurisdiction as well.

circumstances which warrant general jurisdiction elsewhere. *Id.* at 139 n.19. HireRight's Californian finance and IT departments do not create contacts "'so substantial and of such a nature'" as to justify the corporation being subject to general jurisdiction in the state. *Id.* at 127 (quoting *Int'l Shoe*, 326 U.S. at 318). Such a determination would not allow national corporations like HireRight "to structure their primary conduct with some minimum assurance" as to where their multi-state conduct would render them liable to suit. *Id.* at 139. HireRight clearly operates in a variety of states, with offices and executives spread across the nation, and it would be improper to subject the corporation to general jurisdiction in California solely because it employs people in the state. *Id.* at 139 n. 20 ("General jurisdiction . . . calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them."). Plaintiff has failed to make a prima facie showing of general jurisdiction over HireRight. *See Johnson* 860 F. App'x 532; *see also Pestmaster*, 2017 WL 1956927, at *3; *see also Garlough*, 2021 WL 1534205, at *3. Finally, although HireRight is registered to do business in the state, "California does not require corporations to consent to general personal jurisdiction in that state when they . . . register to do business." *AM Tr. v. UBS AG*, 681 F. App'x 587, 588-89 (9th Cir. 2017) (holding that a Swiss corporation that was registered to do business in California was not subject to general jurisdiction); *compare Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. 2028, 2044 (2023) (plurality decision upholding a Pennsylvania statute requiring that out-of-state defendants that register to do business in the state consent to general personal jurisdiction; holding that this comports with the due process clause).

D. <u>Jurisdictional Discovery</u>

A district court may appropriately grant jurisdictional discovery "'where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (citation omitted). By contrast, "'a refusal [to grant discovery] is not an abuse of discretion when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction.'" *Martinez*, 764 F.3d at 1070 (citation omitted). And "[w]here a plaintiff's claim of personal

9

Case 3:23-cv-00838   Document 49   Filed 08/09/23   Page 9 of 13 PageID #: 363

jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006).

In *LNS Enterprises LLC v. Continental Motors, Inc.*, 22 F.4th 852 (9th Cir. 2022), the Ninth Circuit addressed a request for jurisdictional discovery where the plaintiff asserted specific jurisdiction. The defendant corporations "specifically rebutted [p]laintiffs' unsupported jurisdictional allegations and arguments" through attached declarations and affidavits from their respective corporate officers explaining their lack of connection to the forum state. *Id.* at 858, 865. The court noted that "[p]laintiffs sought jurisdictional discovery 'without providing any affidavit or evidence substantiating their requests or describing with any precision how such discovery could be helpful to the Court,'" and their request amounted to only a "mere 'hunch.'" *Id.* at 865. *Compare, e.g.*, *Good Job Games Bilism Yazilim Ve Pazarlama A.S. v. SayGames, LLC*, No. 20-16123, 2021 WL 5861279, at *1 (9th Cir. Dec. 10, 2021) (finding that a plaintiff's proposed interrogatories and requests for productions which sought specific information regarding game downloads, revenue, and advertising was a sufficient basis to grant jurisdictional discovery).

The case at bar is analogous to *LNS*. Here, HireRight has provided concrete evidence that specifically rebuts Plaintiff's unsupported allegations and arguments in support of general jurisdiction. Furthermore, Plaintiff has failed to provide any evidence to support his requests for discovery, nor has he explained how discovery could be helpful to the Court or provide any proposed discovery for the Court to consider. It is also worth noting that, where a plaintiff is asserting general jurisdiction with respect to a company, there might typically be publicly available information demonstrating that the defendant company is at home in the state. Given the lack of any factual predicate to support Plaintiff's request and the absence of any details of what Plaintiff seeks to discover, Plaintiff's request for jurisdictional discovery is denied.

E.     <u>Severance and Transfer of HireRight's Claims</u>

Although the Court has found a lack of general jurisdiction over HireRight, it need not dismiss the claims against it. Plaintiff has suggested that, in lieu of dismissal, the Court should sever and transfer the claims against HireRight, either to a district in Tennessee or Oklahoma.

Plaintiff does not specify under what authority the Court could effect a transfer of the claims against HireRight. Presumably, he is referring Federal Rule of Civil Procedure 21 and to 28 U.S.C. § 1631. Rule 21 provides that "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. Section 1631, in turn, states in relevant part as follows:

> Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court (or, for cases within the jurisdiction of the United States Tax Court, to that court) in which the action . . . could have been brought at the time it was filed or noticed, and the action . . . shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631.

There is some discussion as to whether § 1631 allows for a transfer where personal jurisdiction (as opposed to subject matter jurisdiction) is lacking. However, "the weight of circuit authority" has broadly understood "that the use of the term 'jurisdiction' in § 1631 encompasses both subject-matter and personal jurisdiction," and "the statute therefore requires a transfer when a district court lacks either type of jurisdiction and the other statutory prerequisites are met." *Franco v. Mabe Trucking Co., Inc*., 3 F.4th 788, 795 (5th Cir. 2021); *see also Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020) ("a district court that lacks personal jurisdiction must at least consider a transfer . . . [and] [t]he relevant statute provides that the district court "shall" transfer the case rather than dismiss it 'if [doing so] is in the interest of justice.' 28 U.S.C. § 1631"); *see also Fed. Home Loan Bank of Bos. v. Moody's Corp.*, 821 F.3d 102, 118 (1st Cir. 2016), *abrogated on other grounds by Lightfoot v. Cendant Mortg. Corp*., 580 U.S. 82 (2017) (finding a "broad construction is consistent with § 1631's purpose and goals" and such an interpretation "is in line with . . . the weight of [circuit] authority"). Although some district courts have held transfers pursuant to § 1631 are limited to cure a lack of subject matter jurisdiction and do not extend to transfers for lack of personal jurisdiction, *see Allen v. Conagra Foods, Inc*., No. 3:13-CV-01279-WHO, 2019 WL 5191009, at *3 (N.D. Cal. Oct. 15, 2019), "no

1  circuit courts [] have actually adopted the view that § 1631 does not apply to a transfer to cure a
2  lack of personal jurisdiction." *Franco*, 3 F.4th at 795.

3  There is also some dispute as to whether a partial transfer is permissible under § 1631.
4  *See, e.g.*, *Allen,* 2019 WL 5191009, at *3. However, the Court finds that once the action against
5  HireRight is severed, the resulting suits "may be regarded as two separate and independent
6  actions, each of which is then transferrable [] pursuant to the terms of section 1631." *D'Jamoos ex
7  rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 110 (3d Cir. 2009) (holding that a
8  district court may sever the claims against one defendant to transfer them to a proper venue, to
9  cure a lack of personal jurisdiction, regardless of the claims against the other defendants in the
10 action).

11 The Court need not definitively decide these issues because, at the hearing, HireRight
12 indicated that it did not oppose severance and transfer. Furthermore, Defendant Lyft made an
13 appearance at the hearing and did not oppose severance and transfer either. The Court further
14 notes that severance in this case at least would not be problematic given that the claims against
15 HireRight (*i.e.*, a failure to respond to a request for information) are discrete and separate from the
16 claims against the other defendants (*e.g.*, failure to provide adverse action notice, defamation, and
17 intentional interference with economic prospects). *See Gaffney v. Riverboat Servs.*, 451 F.3d 424,
18 442 (7th Cir. 2006) ("[A] district court may sever claims under Rule 21, creating two separate
19 proceedings, so long as the two claims are 'discrete and separate.' In other words, one claim must
20 be capable of resolution despite the outcome of the other claim.").

21 Accordingly, the Court severs the claims and transfers them to the Middle District of
22 Tennessee. There appears to be no dispute that there is general jurisdiction in this Tennessee
23 district court given that this is where HireRight's headquarters are located.
24 ///
25 ///
26 ///
27 ///
28 ///

### III. CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's request for jurisdictional discovery and finds that general jurisdiction is lacking over HireRight. However, in lieu of dismissal, the Court severs Plaintiff's claims against HireRight and transfers them to the Middle District of Tennessee.

This order disposes of Docket No. 20.

**IT IS SO ORDERED**.

Dated: August 9, 2023

_____
EDWARD M. CHEN
United States District Judge